IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| A.S.C.I.B., L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:20-CV-1125-RP |
| | § | |
| CURTIS CARPENTER, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Counter-Defendant A.S.C.I.B., L.P. d/b/a/ Sheshunoff & Co. Investment Banking's ("Sheshunoff") motion for summary judgment. (Dkt. 47). Having considered the parties' submissions, the record, and the applicable law, the Court will partially grant the motion for summary judgment.

**I. BACKGROUND**

Curtis Carpenter ("Carpenter") is a former Sheshunoff employee for 18 years who resigned as Head of Investment Banking on May 29, 2020. (Counterclaim, Dkt. 9, at 3). Although Carpenter expected to continue to work for Sheshunoff for an additional 10 weeks, Sheshunoff terminated him on June 30, 2020. (*Id.* at 3–4).

Prior to his termination, Carpenter had signed a Phantom Equity Deferred Compensation Agreement (the "Plan") with Sheshunoff. (Plan, Dkt. 48-1, at 3–16). Under the Plan, Carpenter was eligible to receive certain benefits when he left Sheshunoff, to be paid as ten annual payments, but only if he did not commit an act of "cause" as defined in the Plan. (*Id.* at 6). "Cause" included "disclosing trade secrets," "competing directly or indirectly" against Sheshunoff, and "willful misconduct." (*Id.* at 3).

1

As part of his termination process, Carpenter also signed a release (the "Release") waiving most claims against Sheshunoff in exchange for a severance payment of $15,665.68. (Release, Dkt. 9-4). To this day, Carpenter has not received the severance payment. The Release also included a clause mandating Carpenter to return confidential information to Sheshunoff "promptly" after termination. (*Id.* at 3). On July 6, 2020, Carpenter returned his work laptop and phone to Sheshunoff. (Counterclaim, Dkt. 9, at 5). Sheshunoff alleges that Carpenter's computer and phone had been wiped of information. (Mot. Summ. J., Dkt. 47, at 3).

Based on forensic analysis, Sheshunoff determined that some of the data in the devices, including confidential information such as lists of customers and top prospects, had been transferred to a USB drive. (*Id.* at 3). On July 22, 2020, Sheshunoff filed a petition and application for a temporary restraining order in state court. (Counterclaim, Dkt. 9, at 5). It is undisputed that prior to the petition, Sheshunoff had not contacted Carpenter to recover the USB drive and the confidential data. (*Id.* at 5). Carpenter alleges he consented to the proposed injunction and delivered the requested USB devices to a forensics team, at Sheshunoff's behest, on July 28, 2020. (*Id.* at 5). Sheshunoff alleges that Carpenter did not act "promptly." (Mot. Summ. J., Dkt. 47, at 19). On August 7, 2020, Sheshunoff informed Carpenter that his case would be referred to the Administrative Committee to determine whether there was "cause" under the Plan. (Counterclaim, Dkt. 9, at 5).

The Plan confers power on an Administrative Committee to administer the Plan. (Plan, Dkt. 48-1, at 51). According to Sheshunoff, this meant the Administrative Committee was the Plan administrator under ERISA. (*Id.*). The Plan also gives the Administrative Committee power to construe the Plan and make final and binding determinations under the Plan. (*E.g., id.* at 51 ("[C]onstruction by the Administrative Committee of any provision of this Agreement shall be final and conclusive."); *id.* at 52 ("The decision of the Administrative Committee as to the existence of

2

Cause in any situation shall be final.")). Sheshunoff appointed Mike McKetta to be the Administrative Committee on the matter of Carpenter's termination. (Action re: McKetta's Appt., Dkt. 48-2, at 215). Carpenter alleges McKetta had a conflict of interest because he had an attorney-client relationship with Sheshunoff. (Counterclaim, Dkt. 9, at 6). On October 2, 2020, McKetta issued a determination that Carpenter had committed multiple acts of "cause" that forfeited his right to benefits under the Plan. (McKetta's Determ., Dkt. 48-1, at 230–37). Upon appeal, McKetta affirmed his determination. (McKetta Appeal Resp., Dkt. 48-2, at 368–70).

Carpenter then removed Sheshunoff's July 22, 2023, state action to this Court, (Notice of Removal, Dkt. 1), and raised five counterclaims: (1) an ERISA interference claim, (2) an ERISA failure to pay benefits claim, (3) an ERISA procedural violations claim, (4) a fraud claim, and (5) a breach of contract claim. Because the parties were able to reach an agreement on some of Sheshunoff's affirmative claims, and Sheshunoff's other claims were duplicative of Carpenter's counterclaims, Sheshunoff's claims were dismissed without prejudice. (Dkts. 16, 19).

Sheshunoff then moved for Motion Judgment on the Pleadings as to Carpenter's fraud and interference claims, which was referred for a report and recommendation. (Dkt. 12). Adopting the report and recommendation, this Court partially granted Sheshunoff's motion and dismissed Carpenter's fraud claim. (Dkt. 27).

Sheshunoff then moved for summary judgment on all of Carpenter's remaining claims. (Dkt. 47). Sheshunoff argues that: (1) Carpenter's interference claim is duplicative, (2) McKetta's cause determination is reasonable and not arbitrary or capricious, (3) Sheshunoff has substantially complied with ERISA's procedural requirements, and (4) Carpenter is not entitled to benefits under the Release because he failed to "promptly" return confidential materials, as required by the contract. (*Id.*). Carpenter filed a response, (Dkt. 55), and Carpenter filed a reply, (Dkt. 57).

## II. LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a

genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### III. DISCUSSION

Four counterclaims remain: (1) an ERISA claim for recovery of benefits; (2) an ERISA claim for procedural violations; (3) an ERISA claim for interference with benefits; and (4) a breach of contract claim. The Court will address each of these separately.

#### A. ERISA Claims

1. Denial of Benefits Claim

a. Carpenter's Motion to Set *De Novo* Standard of Review

Carpenter's first claim is to recover benefits under ERISA Section 502(a)(1)(B). (Counterclaim, Dkt. 9, at 7). A denial of benefits challenged under § 502(a)(1)(B) "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co.* v. *Bruch*, 489 U.S. 101, 115 (1989). If the plan confers discretionary authority on the administrator, courts apply a deferential standard of review. *Lebron v. Nat'l Union Fire Ins. Co.*, 849 F. App'x 484, 487 (5th Cir. 2021). Under this deferential standard, the administrator's decision must be upheld if supported by substantial evidence and if it is not arbitrary and capricious. *See Foster v. Principal Life Ins. Co.*, 920 F.3d 298, 304 (5th Cir. 2019). Plaintiff argues that the plan does not grant discretion to the administrator and has moved to set the standard of review as *de novo*. (Resp., Dkt. 55, at 1).

The Plan at issue grants discretion to the plan administrator. A plan grants discretion if the plan administrator has "authority to determine eligibility for benefits or to construe the terms of the plan." *Jimenez v. Sun Life Assur. Co.*, 486 F. App'x 398, 405 (5th Cir. 2012). The Fifth Circuit has found that plans that grant "the administrator the authority to make a final and conclusive

determination of the claim" should be reviewed under a deferential standard. *Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1305 (5th Cir. 1994). Here, the Plan states that "[t]he Administrative Committee shall administer and construe this agreement, and that "construction by the Administrative Committee of any provision of this Agreement shall be final and conclusive." (Plan, Dkt. 48-1, at 51). Like the plan in *Duhon*, Sheshunoff's Plan bestows discretion by making the administrator's decisions "final and conclusive." *Duhon*, 15 F.3d at 1305; (Plan, Dkt. 48-1, at 51).

Carpenter incorrectly insists that, even if the Plan grants some discretion, it did not give McKetta discretion in his determination of "cause." The Plan provides that:

> The Determination of whether a Participant has been terminated for Cause or whether an event of Cause has occurred shall be made by the Administrative Committee after consideration of the facts presented on behalf of both the Partnership and the Participant. The decision of the Administrative Committee as to the existence of Cause in any situation shall be final.

(Plan, Dkt. 48-1, at 52). In contrast, the plan in *Duhon* allowed the plan administrator "to authorize or deny payments" only "after [undergoing] the necessary physical examination(s) and upon review of all facts in the case." *Duhon*, 15 F.3d at 1305. According to Carpenter, *Duhon*'s plan's language went further by imposing additional steps for the plan administrator's consideration within a prescribed claims procedure. (Resp., Dkt. 55, at 7). However, additional steps would circumscribe a plan administrator's discretion, not expand it. If anything, the lack of additional steps suggests that Sheshunoff's plan grants more discretion than the plan in *Duhon* did.

Carpenter's other arguments are similarly unavailing. For example, he argues that McKetta was not eligible to serve as plan administrator because he was neither "a member, manager, office or employee of the General Partner" to which the Administrative Committee could delegate its duties under Section 3.3 of the Plan. (Resp., Dkt. 55, at 5; Plan, Dkt. 48-1, at 51). He further argues that McKetta's appointment was not to administer the Plan, but simply to make a determination of cause. (Resp., Dkt. 55, at 5). But the evidence shows McKetta was appointed to be the

6

Administrative Committee, not one of its delegates. (Action re: McKetta's Appt., Dkt. 48-2, at 215). And Carpenter's evidence does not support his contention that McKetta's appointment was limited.

Finally, Carpenter argues that McKetta should not have been appointed because he had a conflict of interest. But a conflict of interest does not change the applicable standard of review; it simply operates as evidence of potential abuse of discretion. *See Foster*, 920 F.3d at 303 (applying abuse of discretion and evaluating a conflict of interest as "'but one factor among many that a reviewing judge must take into account'") (citation omitted). Furthermore, Carpenter has not presented any evidence of a relevant conflict of interest. The key question for a conflict of interest under ERISA is whether the decisionmaker had conflicting financial incentives. *Burrell v. Prudential Ins. Co. of America*, 820 F.3d 132 (2016) ("This conflict of interest influences our analysis of whether an abuse of discretion occurred"); *see Jurasin v. GHS Prop. & Cas. Ins. Co.*, 463 F. App'x 289, 291 (5th Cir. 2012) (courts must consider a conflict of interest when there is a "dual role as the evaluator and the payor."). Courts most often find a conflict of interest when the person or entity making benefits decisions is the same as the entity paying those benefits. *Id.*; *Foster*, 920 F.3d at 307 (finding a conflict of interest where defendant both evaluated and paid the claims). That is not the case here. Instead, Carpenter concedes that there was no "clear financial incentive" at play but insists that "there is still a question of loyalties" because McKetta represented Sheshunoff in unrelated matters in the 1980's and 90's, and in one or two projects in the early 2010's. (Resp., Dkt 55, at 13; McKetta Depo., Dkt. 55-3, at 9). This is not sufficient to establish a conflict of interest in this case.

The Plan at issue grants discretion to the administrator, and Carpenter's arguments do not persuade the Court otherwise. Therefore, the Court will deny Carpenter's request to follow a *de novo* standard of review and instead follow a deferential standard.

### b. Applying the Standard

7

The Fifth Circuit has held that an administrator's decision must be upheld if supported by substantial evidence and if it is not arbitrary and capricious. *Foster*, 920 F.3d at 304. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) (quotation marks omitted). A decision is arbitrary and capricious only if lacking "a rational connection" between the evidence, findings, and decision. *Foster*, 920 F.3d at 304. A court's review "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end. *Id.*

Here, Carpenter argues that McKetta's determination was incorrect, but he does not argue that McKetta's finding of cause was unreasonable under the applicable standard. For example, Carpenter alleges that the evidence contradicts Sheshunoff's claim that the lists he shared were "critical trade secrets" compiled "'over several years.'" (Resp., Dkt. 55, at 10 (citing Mot. Summ. J., Dkt. 47, at 8)). He also alleges that McKetta failed to consider the contents of the information Sheshunoff claimed were trade secrets. (*Id.* at 16). Carpenter insists that McKetta's determination ignored these kinds of "clear fact issues," which the Court should resolve at trial. (*Id.* at 11). However, the Plan gives McKetta discretion to evaluate the facts and evidence. Based on this record, Carpenter lacks substantial evidence to support his claim and, even if he did, he cannot show that McKetta abused his discretion. "Even if an ERISA plaintiff supports his claim with substantial evidence, or even with a preponderance, he will not prevail for that reason." *Foster*, 920, F.3d at 304. "[A]t the summary judgment stage," Carpenter "must show there was not substantial evidence in the administrative record supporting [McKetta's] determination, such that its finding for [Sheshunoff] was an abuse of discretion." *Caples v. U.S. Foodservice, Inc.*, 444 Fed. Appx. 49, 53 (5th Cir. 2011). The Court finds that Carpenter has not met this burden.

Because Carpenter has not met his burden to show that McKetta's determination was an abuse of discretion, the Court will grant summary judgment in Sheshunoff's favor and dismiss Carpenter's ERISA failure to pay benefits claim.

### 2. Procedural Violations Claim

#### a. 29 C.F.R. § 2560.503-1(h)(2)(iv) Violation

In Count 3 of his counterclaim, a Carpenter also raises "Violations of ERISA" claim. (Dkt. 9, at 8–9). The Court construes this claim as a procedural violations claim under ERISA. Procedural violations under ERISA are evaluated under a "substantial compliance" standard. *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 539 (5th Cir. 2007), *abrogated on other grounds by Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010). "This means that technical noncompliance with ERISA procedures will be excused so long as the purpose Section 1133 has been fulfilled." *Id.* "The purpose of section 1133 is to afford the beneficiary an explanation of the denial of benefits that is adequate to ensure meaningful review of that denial." *Id.* Because the standard of review is lenient, "we rarely find that an administrator failed to substantially comply with the procedural requirements of ERISA." *Lafleur v. La. Health Serv. & Indem. Co.*, 563 F.3d 148, 157 (5th Cir. 2009).

Sheshunoff alleges it complied or exceeded ERISA procedural requirements, and Carpenter has not raised a material issue of fact otherwise. Although Carpenter states there were many irregularities in his claims process, he cites only a few specific ERISA rules that McKetta may have violated in evaluating his appeal, and these violations are not be enough to suggest that Sheshunoff did not substantially comply with ERISA. (Resp., Dkt. 55, at 17; Counterclaim, Dkt. 9, at 8–9). Furthermore, Carpenter has not raised a material issue of fact as to whether such violations occurred.

For example, per 29 C.F.R. § 2560.503-1(h)(2)(iv), McKetta had to consider evidence at the reconsideration stage "without regard to whether such information was submitted or considered in the initial benefit determination." Carpenter argues that McKetta disregarded a declaration he submitted on appeal because it was not provided with his initial submission. (Resp., Dkt. 55, at 17; McKetta Appeal Resp., Dkt. 48-2, at 369). However, the letter Carpenter cites does not support his claim that McKetta "disregarded" the declaration. In fact, after noting that the letter was not part of the original submission, McKetta proceeded to evaluate the merits and credibility of the letter independently. (McKetta Appeal Resp., Dkt. 48-2, at 369 (noting that Carpenter's declaration included conclusory statements that did not line up with other evidence)). Given McKetta's analysis, the single sentence Carpenter cites is not enough to raise a material issue of fact as to whether McKetta reviewed his determination *de novo.*

Carpenter's other arguments also fail. Carpenter's counterclaim alleges that Sheshunoff violated ERISA by allowing McKetta to review his own initial determination, but only group health plans are required to have a different decisionmaker on appeal. *See* 29 C.F.R. § 2560.503-1(h)(3)(ii). To the extent that Carpenter has articulated other procedural complaints, he appears to attack informalities in the process. (*See* Counterclaim, Dkt. 9, 8–9 (referring to the procedures at issue as "ad hoc and improper")). But ERISA procedures are not strict requirements, and "ERISA cases are appropriately handled with some informality by the plan administrator." *Barhan v. Ry-Ron Inc.*, 121 F.3d 198, 202 (5th Cir. 1997). The Court finds that Carpenter has not shown a genuine issue of material fact regarding any alleged irregularities and, to the extent Carpenter has, those technicalities are permissible as a matter of law.

### b. Leave to Amend

Carpenter argues that Count 3 of his counterclaim is not a simple procedural violations claim, but a broader "ERISA violations" claim. (Resp., Dkt. 55, at 18). Carpenter also refers to an

"estoppel claim." (*Id.* at 19). Indeed, in Count 3, Carpenter "seeks judgment estopping Seshunoff from refusing to pay his benefits pursuant to section 2.3 of the Plan and/or all other appropriate equitable relief." But Carpenter's pleadings do not support a broader "ERISA violations" claim. The examples he gives in Count 3 and in his response refer only to procedural violations. (Counterclaim, Dkt. 9, at 8–9; Resp., Dkt. 55, at 18). Carpenter's use of "estoppel" cannot, by itself, turn his claim into a broader claim when the underlying injury focuses on procedural issues. Accordingly, the Court construed Count 3 as a procedural violations claim in its analysis.

Carpenter also asks the Court for leave to amend his counterclaim if the Court finds that his broad "violations" claim lacks specificity. However, Carpenter's counterclaim does not lack specificity. It is clear; it addresses procedural violations. Mere weeks before trial, Carpenter appears to be trying to "salvage his claim by relying on allegations he never pleaded." *Kelly v. Lexxus Int'l*, 2008 U.S. Dist. Lexis 10614, at *11 (N.D. Tex. Feb. 13, 2008). The Court will deny Carpenter his request for leave to amend his counterclaim. Having denied this request, the Court will grant summary judgment for Sheshunoff on Carpenter's procedural violations claim.

### 3. Interference Claim

Carpenter also raised several interference claims against Sheshunoff, (Counterclaim, Dkt. 9, at 6–7), and the Court will dismiss all of them. Carpenter's claim that Sheshunoff interfered with his right to benefits by using the state court action as a pretext not to pay benefits owed to him under the plan survived judgment on the pleadings because it was an issue better decided at trial. (R. & R., Dkt. 24, at 8, *adopted by* Order, Dkt. 27). At this stage, however, Carpenter has failed to offer any evidence that Sheshunoff's filed its suit a pretext not to pay his benefits. Therefore, Carpenter has not met his burden, and the Court must dismiss this claim.

In his remaining interference claim, Carpenter also alleges that Sheshunoff interfered by creating an unfair ad hoc claims an appeals process. (Counterclaim, Dkt. 9, at 7). However, this

allegation is essentially a procedural violations claim, which the Court has already addressed. The claim is duplicative, and the Court will dismiss it. (*Manuel*, 905 F.3d at 867).

### B. Breach of Contract

Finally, Carpenter raised a breach of contract claim against Sheshunoff for failing to pay his severance under the Release agreement. (Counterclaim, Dkt. 9, at 10–11). Sheshunoff argues that it is not required to pay Carpenter's severance because Carpenter failed to fulfill a condition precedent to the payment. (Mot. Summ. J., Dkt. 47, at 19). Specifically, Sheshunoff alleges that Carpenter failed to "promptly" return confidential materials, as required by the contract. *Id.*

Assuming, *arguendo*, that this clause was indeed a condition precedent, Carpenter has raised an issue of fact as to his fulfillment of the clause. The Release does not define the word "promptly." Carpenter has presented evidence that he returned the disputed materials less than a month after his termination. (Resp., Dkt. 55, at 12 (describing the timeline of Carpenter's termination and his return of the materials)). Sheshunoff does not point to any particular provision or case that suggests that the alleged delay here was necessarily not "prompt." Therefore, the Court cannot find that Sheshunoff breached the contract as a matter of law. Accordingly, the Court will deny Sheshunoff's motion on this claim.

### IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Sheshunoff's Motion for Summary Judgment, (Dkt. 47), is **GRANTED IN PART** and **DENIED IN PART**. **IT IS ORDERED** that Sheshunoff's motion is **DENIED** as to Carpenter's breach of contract claim. **IT IS ORDERED** that Sheshunoff's motion is **GRANTED** and Sheshunoff is entitled to summary judgment as to all remaining claims.

**IT IS FURTHER ORDERED** that Carpenter's Motion to Set Standard of Review and Request for Leave to Amend Counterclaim, (Dkt. 55), is **DENIED**.

**SIGNED** on April 18, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE